UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| TERESA ANN WILLIAMS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 1:05CV213 TCM |
| ) | |
| JO ANNE B. BARNHART, ) | |
| Commissioner of Social Security ) | |
| ) | |
| Defendant. ) | |

BRIEF IN SUPPORT OF ANSWER

Nature of Action and Prior Proceedings

This suit involves an application for disability insurance benefits under Title II of the Social Security Act (the Act), 42 U.S.C. §§ 401 et seq. (Tr. 141-43), and an application for supplemental security income (SSI) based on disability under Title XVI of the Act, 42 U.S.C. §§ 1381 et seq. (Tr. 95-97). Section 205(g) of the Act, 42 U.S.C. § 405(g), provides for judicial review of a "final decision" of the Commissioner of the Social Security Administration under Title II. With respect to the Title XVI claim, Section 1631(c)(3) of the Act, 42 U.S.C. §1383(c)(3), provides for judicial review to the same extent as the Commissioner's final determination under section 205.

Plaintiff's applications were denied at the initial determination level on April 5, 2004 (Tr. 63-67). On May 27, 2005, following a hearing (Tr. 27-56), an administrative law judge (ALJ) issued a decision in which he found that Plaintiff was not under a "disability" as defined in the Social Security Act at any time through the date of the decision (Tr. 17-26). On

September 30, 2005, the Appeals Council of the Social Security Administration denied Plaintiff's request for review of the ALJ's decision (Tr. 3-6). Thus, the ALJ's decision stands as the final decision of the Commissioner.

## Statement of Facts

Plaintiff filed applications for disability insurance benefits and SSI based on disability, with a protective filing date of January 20, 2004 (Tr. 95-97, 141-43). She was born in 1961, and alleged that she became disabled beginning December 5, 2002, at age 41 (Tr. 42, 223). In a Disability Report submitted with her applications, Plaintiff alleged that she was disabled due to carpal tunnel syndrome, a shoulder problem, high blood pressure, and acid reflux disease (Tr. 182). Defendant adopts the discussion of facts, including the hearing testimony and medical evidence, contained in the ALJ's decision dated May 27, 2005 (Tr. 17-26).

## Statement of the Issues

The general issues in a Social Security case are whether the final decision of the Commissioner is consistent with the Social Security Act, regulations, and applicable case law, and whether the findings of fact are supported by substantial evidence on the record as a whole. The specific issue presented in this case is whether substantial evidence supports the ALJ's credibility finding.

## Standard of Review

The standard of appellate review of the Commissioner's decision is limited to a determination of whether the decision is supported by substantial evidence on the record as a whole. See Guilliams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005) (citation omitted). "Substantial evidence is less than a preponderance, but enough that a reasonable mind would find

it adequate to support the ALJ's determination." Id. As long as substantial evidence in the record supports the Commissioner's decision, the court may not reverse it either because substantial evidence exists in the record that would have supported a contrary outcome or because the court would have decided the case differently. See Holley v. Massanari, 253 F.3d 1088, 1091 (8th Cir. 2001) (citation omitted). If, after reviewing the record, the court finds that it is possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, the court must affirm the decision of the Commissioner. See Young v. Apfel, 221 F.3d 1065, 1068 (8th Cir. 2000) (citations omitted). The court may not reverse the Commissioner's decision unless it finds "it would not be possible for any reasonable fact-finder to come to the conclusion reached by the [ALJ]." Barnett v. Barnhart, 362 F.3d 1020, 1022 (8th Cir. 2004) (citation omitted).

Argument

To establish entitlement to benefits based upon disability, a claimant carries the burden of showing that he or she is unable to engage in any substantial gainful activity by reason of a medically determinable impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months. See 42 U.S.C. §§ 416(I), 423(d)(1)(A), and 1382c(a)(3)(A). The 12-month "duration" requirement applies to a claimant's "inability to engage in any substantial gainful activity," not just to his or her underlying impairment(s). See Barnhart v. Walton, 535 U.S. 212, 217-23 (2002). Plaintiff has not met this burden.

Substantial Evidence Supports the ALJ's Credibility Finding

Plaintiff argues that the ALJ did not properly consider her subjective complaints. See Pl.'s Br. at 5-8. Plaintiff's argument is without merit. The ALJ's consideration of the subjective aspects of Plaintiff's complaints comported with the Commissioner's regulations at 20 C.F.R. §§ 404.1529© and 416.929© (2005), as well as the factors for evaluating subjective complaints set forth in Polaski v. Heckler, 751 F.2d 943 (8th Cir. 1984). "The credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts." Baldwin v. Barnhart, 349 F.3d 549, 558 (8th Cir. 2003). See also Eichelberger v. Barnhart, 390 F.3d 584, 590 (8th Cir. 2004) ("We will not substitute our opinion for that of the ALJ, who is in a better position to assess credibility.").

Although an ALJ may not reject a claimant's subjective complaints solely because of lack of objective medical evidence, the absence of such evidence to support the degree of severity alleged is an important factor to be considered by the ALJ. See Kisling v. Chater, 105 F.3d 1255, 1257 (8th Cir. 1997). As the ALJ discussed at length in his decision (Tr. 18-22), substantial medical evidence in the record contradicts Plaintiff's claim of disabling impairment. In fact, the medical findings in Plaintiff's case were minimal.

In October 2001, Brett Barnes, M.D., examined Plaintiff for a complaint of bilateral hand difficulties, but noted only a laceration to her left index finger [an accidental knife injury] and "mild" crepitus of two fingers of her right hand without signs of triggering; Plaintiff had full extension of all joints (Tr. 392). X-rays of both hands were entirely normal (Tr. 392). In May 2002, electromyograph/nerve conduction testing conducted by neurologist Riyadh Tellow,

4

M.D. was also unremarkable, finding no evidence of carpal tunnel syndrome, ulnar neuropathy, or cervical radiculopathy (Tr. 394). Dr. Tellow described the test as a "[n]ormal study" (Tr. 394).

Dr. Barnes saw Plaintiff on two occasions for intermittent symptoms in her hands in June 2002, although examinations were again largely unremarkable (Tr. 390-91). Dr. Barnes found no evidence of any vascular problem; pulses and refill were normal; Allen's test was normal; there was no intrinsic atrophy of the hands; Tinel's signs were negative and Phalen's signs were positive on both sides at about 25 seconds; range of motion of the digits was normal; and there was a slight reduction in range of motion of the wrists, although radial and ulnar deviation were normal (Tr. 390-91). Three x-ray views of the right wrist were normal, as were four x-ray views of the left wrist (Tr. 391). Dr. Barnes also reviewed the electromyograph/nerve conduction study performed by Dr. Tellow, and agreed that it showed no abnormalities (Tr. 391).

In August 2002, R. August Ritter, M.D., examined Plaintiff for pain and numbness in her hands, although examination was again largely unremarkable (Tr. 350-55). Plaintiff was able to make a full grip and full extension of her hands; there was no muscle atrophy of her hands or forearms; artery refill was brisk; there was no tenderness to palpation except for a burning sensation in the fingers; there was negative Tinel's sign for cubital, carpal, and ulnar tunnels; nerve compression test was negative; and Phalen's test was negative (Tr. 350-51). Dr. Ritter ruled out systemic or peripheral neuropathy and opined that Plaintiff had only "overuse syndrome" (Tr. 351). Later that month, Dr. Ritter noted that, despite a recent positive Tinel's test over one of Plaintiff's nerve branches, there were no findings consistent with carpal tunnel syndrome (Tr. 352).

5

During an evaluation in November 2002, Plaintiff told a Health South physical therapist, Misty Kaufman, PTA, that she had unrelieved pain at an intensity of 10 on a 1 to 10 scale, wherein 10 indicated "emergency pain (Tr. 384). When Ms. Kaufman asked if Plaintiff went to the emergency room with such pain, Plaintiff stated that her pain was not that severe (Tr. 384). Even after Ms. Kaufman explained the pain scale, Plaintiff continued to report pain at an intensity of 10, which Ms. Kaufman considered an "inconsistency" (Tr. 384, 386). Ms. Kaufman also noted that Plaintiff demonstrated pain behaviors and did not exert maximum effort during some of the tests (Tr. 382, 386). She concluded: **"The results of this evaluation indicate that Teresa Williams demonstrated self-limiting and inconsistent performance"** (Tr. 382, 386). In considering this evidence, the ALJ appropriately noted: "[t]he claimant's obvious exaggeration of the severity of her pain (a report of unvarying emergency-level pain despite denying the need for emergency room services) and the finding that the claimant demonstrated self-limiting and inconsistent performance are factors that greatly detract from credibility" (Tr. 20). "[A]n ALJ may discount a claimant's allegations if there is evidence that a claimant was a malingerer or was exaggerating symptoms for financial gain." O'Donnell v. Barnhart, 315 F.3d 811, 818 (8th Cir. 2003).

Plaintiff also told Ms. Kaufman that she was going deer hunting that weekend (Tr. 384). Ms. Kaufman noted: "When asked how she was going to shoot or even hold a gun, she stated that she would prop her gun up and pull the trigger if she had to" (Tr. 384). The ALJ appropriately noted "[s]uch inconsistent statements on the part of the claimant detract from credibility" (Tr. 20). See Eichelberger v. Barnhart, 390 F.3d 584, 589 (8th Cir. 2004) ("We have

6

been careful to explain that an ALJ may disbelieve a claimant's subjective reports of pain because of inherent inconsistencies or other circumstances.").

Plaintiff's medical doctors also did believe Plaintiff was so impaired she could not work. In December 2002, Dr. Ritter had a lengthy discussion with Plaintiff in which he had "made it clear to her" that she could safely engage in light work, which he described as lifting up to 10 pounds frequently and 20 pounds occasionally, although with only occasional cold exposure (Tr. 355). The ALJ's residual functional capacity (RFC) finding is consistent with this assessment (Tr. 24-25). Dr. Ritter also stated he did not believe further medical intervention was needed (Tr. 355).

Despite the largely negative clinical and diagnostic findings, Steven Winters, M.D., performed carpal tunnel release surgery on the right side in January 2003 and on the left in March 2003 (Tr. 329, 341-42, 346-47). On both occasions Dr. Winters reported no complications and released Plaintiff in stable condition on the same day of the surgery (Tr. 342, 347). By June 2003, Plaintiff had achieved the therapeutic goal of reduced pain and was released from physical therapy (Tr. 332). On June 19, 2003, Dr. Winters noted that her wrist and finger motion were intact and normal, grip and pitch strength were adequate, and paresthesias had resolved (Tr. 323). Dr. Winters did not believe further treatment was necessary, and released Plaintiff from care with only a 5% partial disability rating for worker's compensation purposes (Tr. 323, 332).

Further evidence that Plaintiff exaggerated the severity of her symptoms surfaced in February 2004, during an examination by Richard Coin, M.D. (Tr. 243-46). While Plaintiff

complained of continued arm and hand symptoms, Dr. Coin's examination was largely unremarkable (Tr. 244-45). He observed that Plaintiff was in no obvious distress, and had well-healed surgical incisions from carpal tunnel surgery, with no redness or swelling, no muscle wasting, normal range of motion of her elbows, good range of motion in both wrists, only slight discomfort to palpation throughout her forearms, only slightly decreased grip strength, and no sensitivity to palpation of her ulnar grooves (Tr. 244-45). X-rays of Plaintiff's elbows were normal, and x-rays of her wrists showed only low grade degenerative changes[1] with no indication of active pathology (Tr. 245). Dr. Coin concluded: **"It is my opinion that her subjective complaints far outweigh any objective findings"** (Tr. 245). While Dr. Coin recommended that Plaintiff undergo a new nerve conduction study and a bone scan, and then return for his treatment recommendation, as the ALJ noted, there is no evidence that she did so (Tr. 20, 245). "A failure to follow a recommended course of treatment also weighs against a claimant's credibility." Guilliams, 393 F.3d at 802 (citing Gowell v. Apfel, 242 F.3d 793, 797 (8th Cir. 2001)).

Clearly, the bulk of the medical evidence of record contradicts Plaintiff's complaint of disabling symptoms. While one physician, Gary Eaton, D.O., suggested in October 2003 that she could lift no more than five pounds with both arms, no more than two pounds with her right arm, and that she was "totally and permanently disabled" (Tr. 238-39), the ALJ gave good reasons to reject Dr. Eaton's opinion (Tr. 20-21). Because Dr. Eaton examined Plaintiff on only

---

[1] Degenerative joint disease, also known as osteoarthritis, is the most frequently occurring form of arthritis. Almost all persons by age 40 have some pathologic changes in weight-bearing joints, although relatively few are symptomatic. By age 70, osteoarthritis is universal. The Merck Manual of Diagnosis and Therapy 1338-42 (16th ed. 1992).

one occasion, he was not entitled the deference afforded a treating physician. "The opinion of a consulting physician who examines a claimant once or not at all does not generally constitute substantial evidence." Jenkins v. Apfel, 196 F.3d 922, 925 (8th Cir. 1999) (quoting Kelley v. Callahan, 133 F.3d 583, 589 (8th Cir. 1998). Furthermore, even the opinion of a treating source, which Dr. Eaton clearly is not, may be rejected where, as here, it is inconsistent with his own examination results and with the record as a whole. See Guilliams, 393 F.3d at 803 (8th Cir. 2005) (citation omitted) (ALJ properly rejected treating physician's opinion due to internal inconsistencies and because it was "outweighed by the other record evidence"). As the ALJ noted in this case, the extreme limitations Dr. Eaton suggested are inconsistent with his own examination, which found Plaintiff to have full muscle strength of her arms to the level of her wrists, no sign of elbow instability or deficiency of movement, negative thoracic outlet testing, intact sensation, and no arm trigger points (Tr. 21, 236).

The ALJ also noted that Dr. Eaton's interpretation of the diagnostic evidence was contradicted by the interpretation given the same evidence by treating physicians, i.e., while Dr. Eaton interpreted a previous nerve conduction study to show mild carpal tunnel syndrome, both Dr. Tellow and Dr. Barnes interpreted the same study to show no evidence of that condition (Tr. 21, 235, 391). Dr. Ritter also did not believe there was clinical evidence of carpal tunnel syndrome (Tr. 352). The ALJ also noted that Dr. Eaton's opinion of extreme limitations was contradicted by evidence from Dr. Ritter, who in December 2002 did not believe that Plaintiff's condition warranted further treatment (Tr. 355), as well as by Plaintiff's treating surgeon, Dr. Winters, who released Plaintiff from treatment in June 2003 with only a 5% partial disability rating (Tr. 323). "It is the ALJ's function to resolve conflicts among 'the various treating and

9

examining physicians.'" Hudson o/b/o Jones v. Barnhart, 345 F.3d 661, 667 (8th Cir. 2003) (quoting Bentley v. Shalala, 52 F.3d 784, 785 (8th Cir. 1995)). See also Cantrell v. Apfel, 231 F.3d 1104, 1107 (8th Cir. 2000) (discussing ALJ's role in resolving conflicts among medical opinions).

In sum, the ALJ properly rejected the opinion of Dr. Eaton because it was "grossly inconsistent with the evidence as a whole and inconsistent with his own examination record," and "outweighed by the opinions of Doctors Barnes, Tellow, Winters, Ritter, Maher, and Coin" (Tr. 21). The ALJ also correctly noted that Dr. Eaton's opinion that Plaintiff was disabled went to an issue that is reserved for the Commissioner (Tr. 21, 239). "A medical source opinion that an applicant is 'disabled' or 'unable to work,' . . .involves an issue reserved for the Commissioner and therefore is not the type of 'medical opinion' to which the Commissioner gives controlling weight." Ellis v. Barnhart, 392 F.3d 988, 994 (8th Cir. 2005) (citing Stormo v. Barnhart, 377 F.3d 801, 806 (8th Cir. 2004)).

The ALJ also considered non-medical factors, including Plaintiff's activities of daily living, which he found were inconsistent with total disability (Tr. 22). This finding is supported by the record. In January 2005, Plaintiff testified that she had a driver's license and drove her boyfriend's truck, went grocery shopping every two weeks, did a little laundry, cooked a "little bit," and tried to do dishes, although she claimed she had "a problem holding onto things" (Tr. 40). She testified that she drove herself 65 miles to the hearing, although she claimed she stopped twice to "give my body a rest" (Tr. 51). She alleged difficulty with other activities such

as using a knife or vacuuming, and claimed she used an electronic wheelchair when shopping[2] (Tr. 50-52). Nonetheless, she also testified that she went turkey hunting with her boyfriend in April 2004 (Tr. 44). Similarly, in November 2002 she told a physical therapist that she was going deer hunting (Tr. 384).[3] On a March 2004 questionnaire, Plaintiff indicated that she watched two-hour television shows without difficulty, vacuumed floors, made meals, washed dishes, although sometimes dropping a dish, and had no difficulty leaving her home weekly to drive 20 miles to a store (Tr. 155-56). The Eighth Circuit has found activities similar to Plaintiff's to be inconsistent with total disability. See e.g., Guilliams, 393 F.3d at 802 (8th Cir. 2005) (holding that "significant" daily activities such as cooking, laundry, were inconsistent with claims of disabling pain); Barnett, 362 F.3d at 1023 (daily activities that including doing laundry, washing dishes, vacuuming, grocery shopping, paying bills, walking for exercise, and attending church were activities consistent with plaintiff's ability to perform past relevant work as a housekeeper or assembly line worker); Hutton v. Apfel, 175 F.3d 651, 654-55 (8th Cir.1999) (ALJ's rejection of claimant's application was supported by substantial evidence where daily activities - making breakfast, washing dishes and clothes, visiting friends, watching television, and driving - were inconsistent with claim of total disability).

---

[2] By contrast, in a March 2004 questionnaire, Plaintiff wrote: "I can shop as long as I don't push a cart around to [sic] much" (Tr. 155).

[3] The ALJ also noted evidence that Plaintiff engaged in off-road vehicle activities, i.e., in August 2004, Tom Brumitt, D.O., interpreted an MRI scan of Plaintiff's knee that was taken after what he referred to as a "[r]ecent 4 wheeler accident" (Tr. 21, 208). As the ALJ noted, Plaintiff disputed this evidence by claiming that the "recent" accident Dr. Brumitt referred to occurred 17 years earlier (Tr. 21, 41-42)

The ALJ also noted that Plaintiff had a sporadic work record for years before she claimed she became disabled (Tr. 23-24). In fact, as the ALJ noted, Plaintiff's earning record indicates less than $4,000 annual earnings in 9 of the 15 years preceding her alleged disability onset in 2002, including five years of no earnings at all (Tr. 23-24, 77). "A lack of work history may indicate a lack of motivation to work rather than a lack of ability." Pearsall v. Massanari, 274 F.3d 1211, 1218 (8th Cir. 2001) (citing Woolf v. Shalala, 3 F.3d 1210, 1214 (8th Cir. 1993)). See also Fredrickson v. Barnhart, 359 F.3d 972, 976 (8th Cir. 2004) (ALJ properly found that plaintiff's "sporadic work record reflecting relatively low earnings and multiple years with no reported earnings" reflected on his lack of motivation to work).

In summation, deference to an ALJ's credibility analysis is appropriate where, as here, the ALJ explicitly discredits the claimant and gives good reason for doing so. See Hogan v. Apfel, 239 F.3d 958, 962 (8th Cir. 2001). "Our touchstone is that [a claimant's] credibility is primarily a matter for the ALJ to decide." Edwards v. Barnhart, 314 F.3d 964, 966 (8th Cir. 2003). Because the ALJ articulated good reason to find Plaintiff's testimony less than credible, his credibility finding should be affirmed.

## Conclusion

Plaintiff had a fair hearing and full administrative consideration in accordance with applicable statutes and regulations. Substantial evidence on the record as a whole supports the Commissioner's decision. Accordingly, the Commissioner's decision should be affirmed.

Respectfully submitted,

CATHERINE L. HANAWAY
UNITED STATES ATTORNEY

  s/ Jane Rund
JANE RUND, Bar #47298
Assistant United States Attorney
111 S. 10th Street, Suite 20.333
St. Louis, Missouri 63102
(314) 539-2200
(314) 539-2777 FAX


OF COUNSEL
Frank V. Smith III
Chief Counsel, Region VII
Social Security Administration

Richard N. Staples, MN Bar # 0280434
Assistant Regional Counsel

CERTIFICATE OF SERVICE

I hereby certify that on May 18, 2006, the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon the following: Donald Rhodes, Attorney for Plaintiff, P.O. Box 226, Bloomfield, Missouri 63825.

                                         s/ Jane Rund
                                         JANE RUND #47298
                                         Assistant United States Attorney